# Illinois Official Reports

## Appellate Court

---

### *People v. Peck*, 2017 IL App (4th) 160410

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. SEAN A. PECK, Defendant-Appellant. |
| District & No. | Fourth District<br>Docket No. 4-16-0410 |
| Filed | April 5, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Macon County, No. 11-CF-1744; the Hon. Timothy J. Steadman, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | Michael J. Pelletier, Jacqueline L. Bullard, and Joel C. Wessol, of State Appellate Defender's Office, of Springfield, for appellant.<br><br>Patrick Delfino, David J. Robinson, and Thomas R. Dodegge, of State's Attorneys Appellate Prosecutor's Office, of Springfield, for the People. |
| Panel | JUSTICE STEIGMANN delivered the judgment of the court, with opinion.<br>Presiding Justice Turner and Justice Harris concur in the judgment and opinion. |

**OPINION**

¶ 1    Following a December 2012 trial, a jury found defendant, Sean A. Peck, guilty of (1) possession of a controlled substance with intent to deliver (15 or more objects but less than 200 objects containing N-benzylpiperazine (ecstasy)) (720 ILCS 570/401(a)(7.5)(A) (West 2010)) and (2) possession of a controlled substance with intent to deliver (less than one gram of a substance containing cocaine) (720 ILCS 570/401(d) (West 2010)) premised on drugs found in a search of defendant's residence. In February 2013, the trial court sentenced defendant to concurrent prison terms of 20 years and 10 years, respectively. Following the sentencing hearing, defendant's counsel filed a motion to reconsider the sentence. Defendant *pro se* filed a separate motion to reconsider the sentence and argued that his trial counsel was ineffective when she failed to file a motion to suppress his incriminating statements. In August 2013, the court denied the motions. Defendant appealed.

¶ 2    On appeal, defendant argued that (1) trial counsel was ineffective for failing to file a motion to suppress his incriminating statements and (2) the trial court erred when it failed to conduct a hearing in compliance with *People v. Krankel*, 102 Ill. 2d 181, 464 N.E.2d 1045 (1984). This court agreed with defendant's latter assertion and remanded the case with directions for the trial court to (1) appoint defendant new counsel and (2) conduct a *Krankel* hearing on his claim of ineffective assistance of counsel. *People v. Peck*, No. 4-13-0749 (May 15, 2015) (unpublished summary order under Supreme Court Rule 23(c)).

¶ 3    On remand, newly appointed *Krankel* counsel filed an amended motion for a new trial. Defendant filed a motion to withdraw the amended motion and argued *Krankel* counsel had (1) not sufficiently communicated with him and (2) a conflict of interest due to a professional relationship with defendant's trial attorney. Defendant elected to proceed *pro se* and filed a new motion to support his contentions for the *Krankel* hearing. At a May 2016 hearing, the court found trial counsel was not ineffective for failing to file a motion to suppress defendant's incriminating statements.

¶ 4    Defendant appeals, arguing (1) that the trial court failed to properly admonish him before permitting him to waive counsel and proceed *pro se* at his *Krankel* hearing and, (2) in the alternative, that his trial counsel was ineffective for failing to file a motion to suppress his incriminating statements following his request for legal representation. For the reasons that follow, we agree with defendant's second argument and reverse and remand for a new trial.

¶ 5                                    I. BACKGROUND

¶ 6    In December 2011, the State charged defendant with (1) possession of a controlled substance with intent to deliver (15 or more objects but less than 200 objects containing ecstasy) (720 ILCS 570/401(a)(7.5)(A) (West 2010)), (2) possession of a controlled substance with intent to deliver (less than one gram of a substance containing cocaine) (720 ILCS 570/401(d) (West 2010)), (3) possession of a controlled substance (15 or more objects but less than 200 objects containing ecstasy) (720 ILCS 570/402(a)(7.5)(A) (West 2010)), (4) possession of a controlled substance (less than 15 grams of a substance containing cocaine) (720 ILCS 570/402(c) (West 2010)), and (5) possession of cannabis (more than 10 grams but not more than 30 grams of a substance containing cannabis) (720 ILCS 550/4(c) (West 2010)). The State enhanced each count due to defendant's prior conviction for possession of cocaine.

¶ 7                                A. The Evidence

¶ 8        These charges arose from a search warrant executed on defendant's residence on February 17, 2011. The police found 0.5 grams of a white substance later tested and identified as cocaine, 19 pills in defendant's kitchen cabinets, and 50 pills in a black leather jacket (17 of the 69 total pills were tested and identified as ecstasy). The police also found a digital scale, a razor blade with white residue on the blade, a screwdriver with white residue on the tip, and a box of sandwich bags in the kitchen cabinets. During the search, defendant and his girlfriend, Pershoun Ewing, were present.

¶ 9        The police later brought defendant to the Decatur police department and placed him in an interview room. Detective Jeff Hockaday informed defendant of his *Miranda* rights (*Miranda v. Arizona*, 384 U.S. 436 (1966)) and asked defendant if he had any questions. Defendant immediately responded, "I want an attorney." Hockaday responded, "You do want an attorney?" Defendant explained he did not want to say anything that the police could use against him. Hockaday stated, "Okay, now like I explained to you out there *** Pershoun is going to be arrested as part of this, okay?" Following this statement, defendant asked what evidence the police retrieved from his residence. Hockaday listed several items that the police found at defendant's residence. He explained he was going to charge Pershoun and send the evidence away for fingerprints. Hockaday told defendant, "I know your prints are going to come back *** so we're just going to go from there."

¶ 10       Hockaday asked defendant if he had any questions. Defendant asked, "What's the next move?" Hockaday responded, "You're going to go to county [jail] here in a minute once I get some paperwork done, alright?" Defendant asked, "What's my charge?" They then discussed the possible charges based on the evidence retrieved from his residence. Defendant reiterated that he was "going to have to hire a lawyer." Hockaday responded, "You've already asked for an attorney *** unless you withdraw that request right here, I'm not going to bother wasting my time with you. Okay? The bottom line—you can help yourself out." Defendant responded, "I'll withdraw it then." Hockaday then began discussing that defendant could become an informant and not face charges. Later, defendant asked about Pershoun, and Hockaday replied, "She's in the hospital, and she's got a warrant *** she's going to get charged with the dope unless I hear the truth from you *** if you make me arrest her, that's what I'll do." Defendant then admitted selling cocaine and ecstasy. The entire interrogation lasted approximately 1 hour and 25 minutes.


¶ 11                                   B. Pretrial

¶ 12       In July 2012, defendant filed a motion to dismiss for ineffective assistance of counsel and argued the State violated his speedy trial rights. The trial court disagreed and found no speedy trial violation. Defendant decided to waive counsel. Soon thereafter, defendant asked the court to reappoint his former counsel. The court granted his request and reappointed his former counsel. However, defendant again took issue with his counsel and argued she neglected to file motions on his behalf and was not working with his best interest in mind. In response, counsel told the newly assigned judge that (1) there was no basis to suppress the search warrant and (2) the previous judge had already ruled on the speedy trial issue.

¶ 13                                    C. Trial

¶ 14    In December 2012, defendant refused to attend his trial, stating that he did not trust his appointed counsel. The trial proceeded in his absence on counts I and II. The testimony focused on evidence recovered after a search of defendant's residence. Hockaday testified about the interrogation, and the jury viewed an edited version of the interrogation, which was approximately eight minutes long and excluded the portions of the interview regarding defendant's request for an attorney and his withdrawal of his request for counsel.

¶ 15    Officer Chad Ramey testified about the items found at defendant's residence. Ramey stated the cocaine was in a large chunk form and there were many pills found in defendant's residence, indicating that they were being sold. Additionally, the other items found in defendant's residence, such as the digital scale, razor blade, screwdriver, and sandwich bags were consistent with the sale of drugs. Ramey stated that although a buyer could possess these items, it was more common for the seller to have them. The white residue on the screwdriver and razor blade found at defendant's residence were never tested.

¶ 16    During closing arguments, the prosecutor relied on the interrogation video and stated, "[Defendant] himself told us exactly what it was he was planning to do with the ecstasy and the cocaine. He made it easy for us." Defense counsel reminded the jury that defendant (1) was not the only person who lived at the residence and (2) admitted possessing the contraband only after Hockaday told defendant of Pershoun's circumstances. On rebuttal, the State maintained that no speculation was required because, during the police interrogation, defendant said exactly what he intended to do with the drugs. The jury found defendant guilty of counts I and II, and the State dismissed the remaining charges.


¶ 17                                    D. Posttrial

¶ 18    In February 2013, the trial court sentenced defendant as previously noted. In February 2013, defendant's counsel filed a motion to reconsider the sentence, arguing defendant's sentence was excessive. Shortly thereafter, defendant *pro se* filed a separate motion to reconsider his sentence, arguing that his trial counsel was ineffective in that counsel failed to file a motion to suppress evidence.

¶ 19    In March 2013, defendant filed a motion for reduction of sentence, again alleging, in pertinent part, that his trial counsel failed to file "key motions" on his behalf. During an August 2013 hearing (at which defendant was not present), defendant's counsel acknowledged that she had yet to review defendant's filings but, relying on the State's representations, informed the trial court that defendant was merely "complaining that his [*pro se*] motion to reconsider hasn't been set for hearing." The State confirmed defense counsel's representations. Relying on the parties' representations, the court stated that it would not inquire further under *Krankel* into defendant's filings. The court scheduled a later hearing to consider defense counsel's February 2013 motion to reconsider the sentence. At an August 2013 hearing, the court denied defense counsel's motion to reconsider the sentence. Defendant appealed.

¶ 20    On appeal, defendant's appointed counsel, the office of the State Appellate Defender (OSAD), argued that (1) trial counsel was ineffective in that she did not file a motion to suppress the incriminating statements defendant made to police following his request for legal representation and (2) the trial court erred when it failed to conduct a *Krankel* hearing to inquire further into defendant's claims of ineffective assistance of trial counsel. The State conceded the second argument, and this court remanded the case with directions that the court

appoint defendant new counsel and conduct a hearing on defendant's ineffective assistance of trial counsel claims.

¶ 21 On remand, defendant's appointed *Krankel* counsel filed an amended motion for a new trial and attached a copy of OSAD's brief. However, the court granted defendant's request to proceed *pro se*, and defendant thereafter *pro se* filed a motion for a *Krankel* hearing, which reiterated the points in his former counsel's amended motion.

¶ 22 In May 2016, the trial court conducted a hearing on defendant's motion. Defendant argued that his trial counsel was ineffective for (1) failing to file a motion to suppress his custodial statements and (2) relying on OSAD's brief. Trial counsel testified that she met with defendant prior to trial, and he requested his statements be suppressed. However, she explained she reviewed the interrogation video and did not believe defendant's rights were violated. Although defendant asserted his right to counsel, she noted that he reinitiated the conversation with Hockaday. The State argued trial counsel was not ineffective because she determined that defendant, following his request for an attorney, reinitiated the conversation with Hockaday, thereby waiving his prior invocation of counsel. Defendant responded trial counsel was incorrect because he only spoke to Hockaday after he threatened to "lock [his] girlfriend up." The court agreed with the State, finding counsel's representation did not fall below an objective standard of reasonableness and defendant was not prejudiced by trial counsel's representation.

¶ 23 This appeal followed.

¶ 24 II. ANALYSIS

¶ 25 Defendant's raises two issues on appeal. First, defendant argues that he did not receive the proper Illinois Supreme Court Rule 401(a) (eff. July 1, 1984) admonitions prior to waiving counsel at the *Krankel* hearing. Alternatively, defendant argues that his trial counsel was ineffective for failing to file a motion to suppress his incriminating statements following his request for legal representation. Because we agree with defendant's second argument, we need not address the first.

¶ 26 To establish a claim of ineffective assistance of counsel, defendant has the burden to show his claim satisfies the two-pronged *Strickland* test (see *Strickland v. Washington*, 466 U.S. 668 (1984)), as recently explained by the Illinois Supreme Court in *People v. Cherry*, 2016 IL 118728, ¶ 24, 63 N.E.3d 871:

> "Under *Strickland*, to prevail on a claim of ineffective assistance of counsel, a defendant must show both that counsel's performance was deficient and that the deficient performance prejudiced the defendant. [Citation.] More specifically, the defendant must demonstrate that counsel's performance was objectively unreasonable under prevailing professional norms and that there is a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' [Citation.] "

¶ 27 A. Objective Standard of Reasonableness

¶ 28 Defendant argues that his trial counsel's performance fell below an objective standard of reasonableness when she failed to file a motion to suppress the incriminating statements he made to Hockaday after he invoked his right to counsel. We agree.

¶ 29    "In order to satisfy the deficient-performance prong of *Strickland*, a defendant must show that his counsel's performance was so inadequate that counsel was not functioning as the 'counsel' guaranteed by the sixth amendment. Counsel's performance is measured by an objective standard of competence under prevailing professional norms." (Internal quotation marks omitted.) *People v. Manning*, 241 Ill. 2d 319, 326-27, 948 N.E.2d 542, 547 (2011). Defendant must overcome the strong presumption that the challenged action or inaction may have been a result of sound trial strategy. *People v. Evans*, 186 Ill. 2d 83, 93, 708 N.E.2d 1158, 1163 (1999). Moreover, the decision whether to file a motion to suppress is generally "a matter of trial strategy, which is entitled to great deference." (Internal quotation marks omitted.) *People v. Bew*, 228 Ill. 2d 122, 128, 886 N.E.2d 1002, 1006 (2008).

¶ 30    In *Miranda*, the United States Supreme Court held that before an accused is subject to custodial interrogation, he must be advised of certain rights, including the right to remain silent and the right to have an attorney present. *Miranda*, 384 U.S. at 444. The Court further held that when an accused invokes this right to counsel, "*the interrogation must cease until an attorney is present*." (Emphasis added.) *Miranda*, 384 U.S. at 474. When this right is invoked, there is a presumption that the accused is unable to proceed without counsel's advice. *Arizona v. Roberson*, 486 U.S. 675, 683 (1988).

¶ 31    In *Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981), the Court expanded upon its decision in *Miranda* and created a bright line rule: when an accused invokes his right to counsel, he "is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." In *People v. Woolley*, 178 Ill. 2d 175, 198, 687 N.E.2d 979, 990 (1997), the Supreme Court of Illinois explained that the *Edwards* holding means that "[i]f the police subsequently initiate a conversation with the accused in the absence of counsel, the accused's statements are presumed involuntary and are not admissible as substantive evidence at trial." Given that the parties in this case do not dispute that defendant was in custody or that he invoked his right to counsel, the sole issue presented is whether Hockaday continued the interrogation after defendant invoked his right to counsel. On this record, we conclude that he clearly did.

¶ 32    Hockaday began the interrogation by reading defendant his *Miranda* rights. Defendant immediately and unequivocally responded, "I want an attorney." Hockaday responded, "You do want an attorney?" Defendant explained he did not want to say anything that the State could use against him. Hockaday stated, "Okay, now like I explained to you out there *** Pershoun is going to be arrested as part of this, okay?" Following this statement, defendant spoke further with Hockaday and eventually admitted selling ecstasy and cocaine.

¶ 33    The Illinois Supreme Court has stated:

    " '[T]he term "interrogation" under *Miranda* refers not only to express questioning, but also to *any words or actions on the part of the police* (other than those normally attendant to arrest and custody) *that the police should know are reasonably likely to elicit an incriminating response* from the suspect.' " (Emphases added.) *People v. Hunt*, 2012 IL 111089, ¶ 30, 969 N.E.2d 819 (quoting *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980)).

¶ 34    When determining whether police words or actions are reasonably likely to elicit an incriminating response, we focus "primarily upon the perceptions of the suspect, rather than

the intent of the police." (Internal quotation marks omitted.) *Hunt*, 2012 IL 111089, ¶ 30, 969 N.E.2d 819.

¶ 35    In this case, defendant argues that when Hockaday said, "Okay, now like I explained to you out there *** Pershoun is going to be arrested as part of this, okay?" Hockaday's statement was reasonably likely to elicit an incriminating response. Viewing the police words or actions primarily from the perceptions of the suspect, as we must under *Hunt*, we agree.

¶ 36    As defendant argued at his *Krankel* hearing, he only continued to speak to Hockaday after the detective threatened to "lock [his] girlfriend up." Because Hockaday's statement was reasonably likely to elicit an incriminating response from defendant, it constituted an improper continuation of defendant's interrogation after he invoked his right to counsel. Hockaday's remarks constituted a clear violation of the United States Supreme Court's bright line rule in *Edwards* and the Illinois Supreme Court's directives in *Hunt*. Once defendant invoked his right to counsel, Hockaday was required to cease the interrogation until such time as an attorney was present.

¶ 37    We conclude that trial counsel could not reasonably have determined that defendant reinitiated the conversation with Hockaday. After viewing the interrogation video, counsel should have concluded that defendant invoked his right to counsel and Hockaday, by not stopping his interrogation, violated defendant's constitutional rights.

¶ 38    Counsel's failure to file this motion was not the result of a tactical decision but of a fundamental misjudgment. Counsel's testimony at the *Krankel* hearing demonstrated she erroneously believed a motion to suppress would be without merit because defendant reinitiated the conversation with police. For these reasons, counsel's performance fell below an objective standard of reasonableness because she should have filed a motion to suppress defendant's custodial statements.

¶ 39                                              B. Prejudice

¶ 40    "[T]o establish prejudice where an ineffectiveness claim is based on the failure to file a suppression motion, the defendant must show that a reasonable probability exists both that the motion would have been granted, and that the result of the trial would have been different had the evidence been suppressed." *People v. Henderson*, 2013 IL 114040, ¶ 12, 989 N.E.2d 192. In *People v. Simpson*, 2015 IL 116512, ¶ 35, 25 N.E.3d 601, the Illinois Supreme Court quoted *Strickland*, 466 U.S. at 694, and explained that "[a] 'reasonable possiblity' is defined as 'a probability sufficient to undermine confidence in the outcome.' " For the reasons previously mentioned, this court concludes trial counsel had a meritorious basis to file a motion to suppress defendant's confessional statement and a reasonable probability exists that the motion would have been granted.

¶ 41    Defendant argues that the outcome of his trial would have been different had his confession been suppressed because without his confession (1) the "intent to deliver" element was much less clear, (2) he could have presented an alternative theory that the drugs belonged to Pershoun, and (3) he would have been able to present jury instructions on lesser-included offenses.

¶ 42    First, defendant argues, without his confession, the "intent to deliver" element was much less clear. Defendant argues his confession was the centerpiece of the prosecution's case. As demonstrated by the transcript of the State's closing argument, the State mentioned

defendant's confession and said the case did not require the jury to draw inferences from circumstantial evidence. Instead, defendant's own confession confirmed his intentions. For example, the State said, "[defendant] himself told us exactly what it was he was planning to do with the ecstasy and the cocaine. He made it easy for us." The State asserted that defendant confessed he was selling ecstasy and cocaine and that was why they were in his possession. The State maintained the same argument on rebuttal, focusing on defendant's confession.

¶ 43　　Next, defendant argues, the admission of his confession prevented him from arguing a different theory—namely, that the evidence collected indicated Pershoun might have been responsible for the ecstasy and cocaine. Defendant notes trial counsel mentioned the leather jacket at trial, which contained 50 of the pills that were found, and asked the jury to consider whether the jacket appeared to belong to a man or a woman. Defendant asserts the jury disregarded this suggestion because of defendant's own confession.

¶ 44　　Last, defendant argues he was prejudiced because he was convicted of the more serious offense of possession with the intent to deliver, noting those were the only charges considered because the trial court denied his request for instructions on lesser-included offenses. For these reasons, defendant suggests the case presents a reasonable probability the outcome of his trial would have been different had his confession not been admitted into evidence. We agree.

¶ 45　　The record demonstrates that defendant's confession had an immense impact on the outcome of his case, and its admission negatively impacted defendant's ability to provide alternative theories and request jury instructions on lesser-included offenses. Additionally, defendant's confession was the State's strongest piece of evidence to establish his intent to deliver. As mentioned by the State in its closing argument, the jury did not have to speculate as to defendant's intent, as he said exactly what he intended to do with the drugs. Accordingly, we conclude defendant was prejudiced by trial counsel's deficient performance.

¶ 46　　　　　　　　　　　　　　III. CONCLUSION

¶ 47　　For the reasons stated, we reverse defendant's conviction and remand for a new trial.

¶ 48　　Reversed and remanded.