NOTICE
This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2020 IL App (4th) 180475-U

NO. 4-18-0475

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

Rule 23 filed June 9, 2020

Modified upon denial of Rehearing July 16, 2020

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Douglas County |
| WILLIAM BRADLEY KIRCHNER, | ) | No. 97CF67 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Roger B. Webber, |
| | ) | Judge Presiding. |

JUSTICE DeARMOND delivered the judgment of the court.
Justices Knecht and Harris concurred in the judgment.

ORDER

¶ 1    *Held*:    The appellate court affirmed, holding the defendant failed to make a substantial showing of a constitutional violation, the trial court properly denied defendant's request for forensic testing, and postconviction counsel provided reasonable assistance.

¶ 2    In February 2018, the trial court granted the State's motion to dismiss defendant William Bradley Kirchner's successive postconviction petition during the second stage of the proceedings under the Post-Conviction Hearing Act (Postconviction Act) (725 ILCS 5/122-1 to 122-7) (West 2014)) and denied defendant's request for forensic testing pursuant to section 116-3 of the Code of Criminal Procedure of 1963 (Criminal Procedure Code) (725 ILCS 5/116-3) (West 2014)).

¶ 3    On appeal, defendant's argument is threefold: (1) the trial court erred in dismissing his postconviction petition because he made a substantial showing he received ineffective assistance of counsel, (2) the trial court erred in denying his request for forensic

testing, and (3) postconviction counsel provided defendant unreasonable assistance. We disagree and affirm the trial court's judgment.

¶ 4                                    I. BACKGROUND

¶ 5        In June 1998, a jury convicted defendant of the August 1997 murders of Charles Brewer, Doris Jean Brewer, and Bonnie Brewer. Our supreme court affirmed defendant's convictions in December 2000. *People v. Kirchner*, 194 Ill. 2d 502, 743 N.E.2d 94 (2000). Meanwhile, defendant filed a *pro se* postconviction petition, arguing he received ineffective assistance of trial counsel. The trial court dismissed the petition in September 2010 and this court affirmed the decision in June 2012. *People v. Kirchner*, 2012 IL App (4th) 100823-U. Defendant filed the instant petition—a successive *pro se* postconviction petition—in September 2015, alleging newly discovered evidence supported his claim of actual innocence. Defendant's petition also included a request for forensic testing pursuant to section 116-3 of the Criminal Procedure Code (725 ILCS 5/116-3 (West 2014)). Defendant attached to this petition several supporting documents, including police reports he received via Freedom of Information Act (FOIA) requests and a witness list from his appellate counsel's file.

¶ 6        After the trial court took no action on defendant's successive postconviction petition, he moved to advance the petition to the second-stage proceedings outlined in the Postconviction Act (725 ILCS 5/122-2.1 (West 2014)). In September 2016, the court advanced defendant's petition "for further consideration pursuant to 725 ILCS 5/122-4 through 122-6" and appointed defendant counsel. New counsel filed an amended postconviction petition and request for forensic testing in May 2017. Though not included in the common law record, postconviction counsel and the trial court confirmed on the record that counsel filed a Rule 651(c) certificate with the amended petition. Ill. S. Ct. R. 651(c) (eff. Feb. 6, 2013). The amended petition alleged

defendant received ineffective assistance from trial and appellate counsel. For trial counsel, the amended petition alleged counsel failed to present a defense that Darrell Brewer (who was named as a potential suspect in multiple police reports attached to the petition) committed the murders, not defendant. As for trial or appellate counsel (it is unclear), the amended petition alleged counsel failed to investigate (and the State failed to disclose) whether a key State witness received immunity in exchange for his trial testimony. Defendant's amended petition incorporated some of the attachments to his *pro se* petition, namely the police reports obtained via FOIA requests and the witness chart from appellate counsel's file.

¶ 7        Despite defendant's failure to obtain leave from the trial court to file a successive petition and make the necessary showings, the court considered the petition's merits and the State's subsequent motion to dismiss it. The court concluded defendant's trial counsel did not render ineffective assistance when counsel opted against presenting a defense that Darrell Brewer committed the murders. The court noted the "[defendant] has provided no affidavits or any other evidence suggesting that there is any actual evidence of [Brewer's] guilt." Even with the police reports mentioning Brewer and detailing the police investigation of Brewer, the court determined "there [wa]s absolutely nothing to suggest that counsel was ineffective for failing to follow-up on this theory or that [defendant] was prejudiced thereby." The trial court next concluded defendant's appellate counsel did not render ineffective assistance for failing to investigate whether a State witness received immunity. The court reasoned that since there was "no evidence that an immunity agreement in fact had been made," appellate counsel was not ineffective for failing "to investigate and prove a non-existent agreement."

¶ 8        The trial court then considered defendant's request for forensic testing and found it "[could] not determine *** the requested testing ha[d] the scientific potential to produce new,

- 3 -

non-cumulative evidence materially relevant to defendant's assertion of actual innocence." The court, therefore, denied defendant's request since it did not meet the statutory requirements for testing outlined in the Criminal Procedure Code. See 725 ILCS 5/116-3 (West 2014).

¶ 9        This appealed followed.

¶ 10                               II. ANALYSIS

¶ 11        Defendant challenges the trial court's order on three grounds. First, he argues the trial court erred in dismissing his amended postconviction petition because he made the requisite showing to survive a motion dismiss, *i.e.*, he made a substantial showing of two constitutional violations—ineffective assistance of counsel and a *Brady* violation. Second, he argues the trial court erred in denying his request for forensic testing since the testing would yield new, non-cumulative evidence supporting his actual innocence. Third, he argues postconviction counsel provided unreasonable assistance. Taking each argument in turn, we disagree and affirm the trial court's order.

¶ 12               A. Dismissal of Defendant's Postconviction Petition

¶ 13        To survive a motion to dismiss from the State at the second stage of postconviction proceedings and advance to a third-stage evidentiary hearing, the defendant's petition "must make 'a substantial showing of a violation of constitutional rights.' " *People v. Wingate*, 2015 IL App (5th) 130189, ¶ 24, 31 N.E.3d 75 (quoting *People v. Coleman*, 183 Ill. 2d 366, 381, 701 N.E.2d 1063, 1072 (1998)). "When a trial court dismisses a petition for postconviction relief at the second stage of proceedings," as it did here, this court "review[s] that dismissal *de novo*, taking as true all well-pleaded facts that are not positively rebutted by the trial record." *Wingate*, 2015 IL App (5th) 130189, ¶ 24 (citing *People v. Pendleton*, 223 Ill. 2d 458, 473, 861 N.E.2d 999, 1008 (2006)). Accordingly, we "may affirm a trial court's dismissal at the

- 4 -

second stage on any grounds substantiated by the record, regardless of the trial court's reasoning." *People v. Snow*, 2012 IL App (4th) 110415, ¶ 17, 964 N.E.2d 1139.

¶ 14                                                1. *Actual Innocence*

¶ 15        Illinois law allows for defendants to file a postconviction petition " 'assert[ing] a freestanding claim of actual innocence based on newly discovered evidence.' " *Wingate*, 2015 IL App (5th) 130189, ¶ 24 (quoting *People v. Ortiz*, 235 Ill. 2d 319, 333, 919 N.E.2d 941, 949-50 (2009)). The law defines "newly discovered evidence" as evidence the defendant discovered after trial " 'and that the defendant could not have discovered sooner through due diligence.' " *Wingate*, 2015 IL App (5th) 130189, ¶ 24 (quoting *Ortiz*, 235 Ill. 2d at 334). "[A]ctual innocence requires that a defendant be free of liability not only for the crime of conviction, but also of any related offenses." *Wingate*, 2015 IL App (5th) 130189, ¶ 32. Though we will still consider his appeal, we must note defendant failed by any measure to show newly discovered evidence established his actual innocence.

¶ 16        Defendant's amended postconviction petition cites zero newly discovered evidence supporting his actual innocence. His *pro se* petition cited a witness list found in his appellate counsel's file and his mother's own investigation suggesting that a key State witness, Dyno Warner, received immunity for his testimony. Even if this information were true, we fail to see how it would prove defendant actually innocent of murdering the Brewers. Such information would merely impeach Dyno Warner and would not merit defendant relief. See *Wingate*, 2015 IL App (5th) 130189, ¶ 24 ("[N]ewly discovered evidence which merely impeaches a witness will typically not be of such conclusive character as to justify postconviction relief." (Internal quotation marks omitted.)) Moreover, defendant did not establish he could not have discovered this information sooner. After all, he relies upon information contained within his appellate

counsel's file. With due diligence he could have, and should have, found that witness list sooner than 2015.

¶ 17        Defendant's *pro se* petition also cited Illinois State Police documents as newly discovered evidence, but the petition alleged those documents established a *Brady* violation because they contained potentially exculpatory evidence. The petition did not allege the police records established actual innocence, *i.e.*, he did not murder the Brewers. Moreover, by failing to discover the police reports sooner, defendant failed to show he exercised due diligence. It strains credulity to believe police reports would not have been part of defendant's file before, during, or after trial.

¶ 18        Even though defendant's petition fails on several levels—he failed to seek leave to file a successive petition and he failed to prove newly discovered evidence supported his actual innocence claim—we will nevertheless consider the merits of his appeal. See generally *People v. Tidwell*, 236 Ill. 2d 150, 162, 923 N.E.2d 728, 735 (2010) (suggesting "there is no impediment or obstacle to appellate review of" a trial court's dismissal of a successive postconviction petition when "the circuit court entered a thorough and reasoned order *** based on the contents of the petition submitted").

¶ 19                    2. *Ineffective Assistance of Counsel*

¶ 20        The sixth amendment to the United States constitution guarantees criminal defendants the right to counsel and mandates " 'the right to counsel is the right to effective assistance of counsel.' " *Strickland v. Washington*, 466 U.S. 668, 686 (1984) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970)); U.S. Const., amend. VI, XIV. When presented with a defendant's ineffective-assistance-of-counsel claim, we apply the well-established, two-part *Strickland* test. The defendant must prove: (1) counsel rendered deficient performance,

meaning counsel's representation fell below an objective standard of reasonableness as gauged by prevailing professional norms; and (2) counsel's deficient performance prejudiced the defendant, *i.e.*, but for counsel's errors the result of the proceeding would have been different. See *People v. Young*, 341 Ill. App. 3d 379, 383, 792 N.E.2d 468, 472 (2003) (citing *Strickland*, 466 U.S. at 687); *People v. Peck*, 2017 IL App (4th) 160410, 79 N.E.3d 232. If a defendant fails to prove deficient performance, the court need not consider the prejudice prong, and vice versa. *People v. Torres*, 228 Ill. 2d 382, 395, 888 N.E.2d 91, 100 (2008); *People v. Graham*, 206 Ill. 2d 465, 476, 795 N.E.2d 231, 238 (2003).

¶ 21        In order to prove deficient performance a " 'defendant must overcome a "strong presumption that counsel's complained-of action or inaction was merely trial strategy." ' " *Young*, 341 Ill. App. 3d at 383 (quoting *People v. Vera*, 277 Ill. App. 3d 130, 138, 660 N.E.2d 9, 16 (1995), quoting *People v. Medrano*, 271 Ill. App. 3d 97, 100, 648 N.E.2d 218, 221 (1995)). To be sure, constitutionally effective representation from counsel does not translate to "perfect[] representation, and mistakes in strategy or in judgment do not" alone amount to deficient performance. *People v. Fuller*, 205 Ill. 2d 308, 331, 793 N.E.2d 526, 542 (2002). Just because "another attorney might have pursued a different strategy [or defense] *** does not establish" deficient performance or prejudice. *Fuller*, 205 Ill. 2d at 331.

¶ 22                                    a. Trial Counsel

¶ 23        Defendant contends his trial counsel rendered deficient performance by not presenting a defense that Darrell Brewer killed his family members. Defendant bases his argument solely upon police reports detailing the police investigation into Darrell Brewer.

¶ 24        The police reports defendant attached to his petition provide little information. In two separate reports, two Brewer family members suggested Darrell might have committed the

murders, but neither provided more than their mere, personal speculation, let alone proof of Darrell's involvement. The police investigated Darrell, interviewing him, searching his home, and seizing a pair of his shoes and a knife found in a tackle box in his garage. Police spoke with Darrell's ex-wife, who acknowledged Darrell could sometimes erupt in anger but did not believe him capable of such crimes. Police also spoke with family friends and neighbors. No one placed Darrell at the scene of the crime or provided viable proof he might have killed his family. More importantly, the police reports do not tell us about anything after these initial interviews. We do not know if the police investigated him further or if defendant's trial counsel followed this lead. Defendant provided no affidavits to support his claim that pointing the finger at Darrell Brewer was a viable defense. For example, he provides no affidavits from witnesses the police talked to about Darrell. He provides no affidavits from law enforcement detailing the investigation into Darrell. And most importantly, defendant provides no affidavit from trial counsel—perhaps because an affidavit from trial counsel would undermine defendant's successive petition by establishing these police reports are not newly discovered evidence. Nevertheless, rather than submitting additional evidence, defendant asked the trial court, and now us, to infer from these few police investigative reports there existed admissible evidence for trial counsel to use in arguing Darrell, not defendant, committed these murders. And then he asks us to conclude from that inference that trial counsel provided him ineffective assistance of counsel. Our answer is simple—no.

¶ 25 The police reports attached to defendant's postconviction petition do not make a substantial showing that trial counsel was ineffective. First, the police reports would not have been admissible evidence at trial. *People v. Strausberger*, 151 Ill. App. 3d 832, 834, 503 N.E.2d 832, 834 (1987) ("The general rule is that police reports are not admissible as substantive

evidence."). As we just noted, defendant points us to no *admissible* evidence that suggests Darrell Brewer committed these crimes. We certainly cannot conclude an attorney renders ineffective assistance when he or she fails to present inadmissible evidence. Second, presuming trial counsel knew of these reports (which is likely since they would have been part of the file) and supposing these police reports could have been admitted somehow (which we seriously doubt), defendant presented no evidence to overcome the strong presumption that counsel's decision against presenting these police reports at trial "result[ed] [from] sound trial strategy." *Peck*, 2017 IL App (4th) 160410, ¶ 29. " '[M]atters relating to trial strategy are generally immune from claims of ineffective assistance of counsel.' " *People v. Hatchett*, 2015 IL App (1st) 130127, ¶ 28, 48 N.E.3d 1223 (quoting *People v. Lopez*, 371, Ill. App. 3d 920, 929, 864 N.E.2d 726, 735 (2007)). Accordingly, even if we indulged defendant's flawed premise that there existed admissible evidence suggesting Darrell Brewer was the true perpetrator here, we would not second-guess trial counsel's strategic decision to present a different defense. See *Peck*, 2017 IL App (4th) 160410, ¶ 29 (stating matters of trial strategy are "entitled to great deference"). Defendant failed to establish trial counsel gave deficient performance, so we need not consider *Strickland*'s prejudice prong. *Graham*, 206 Ill. 2d at 476.

¶ 26                              b. Appellate Counsel's Witness Chart

¶ 27         Defendant's amended postconviction petition alleged he received ineffective assistance from both trial and appellate counsel and then claimed "the defense failed to investigate whether a key identification witness, Dyno Warner, received immunity on his two pending criminal charges in exchange for his testimony at trial." But the amended petition did not identify which attorney—trial, appellate, or both—failed to investigate the alleged agreement between Warner and the State. Defendant's briefing provides zero clarity because it frames this

issue solely as a *Brady* violation and not ineffective assistance of counsel. Defendant's confusion aside, we can still dispense with his argument. The record here positively rebuts defendant's claim that counsel failed to investigate whether Dyno Warner received immunity in exchange for his testimony. On cross-examination by defendant's trial counsel, Dyno Warner confirmed he had been charged with obstruction of justice relating to the Brewers murder investigation. He then testified the State offered him no immunity deals or guarantees, meaning he had not been offered immunity in exchange for his testimony. During the closing argument, trial counsel repeatedly attacked Dyno Warner's credibility. Counsel labeled Warner "a motivated speaker," who changed his story in order to please the State in hopes of receiving immunity. Without proof of any pretrial immunity agreements between Warner and the State, trial counsel still planted the seed in the jury's mind that Warner hoped his current testimony would benefit him in the future.

¶ 28        As for appellate counsel's performance, defendant's petition belies his ineffective-assistance claim. The witness chart from appellate counsel's file that defendant attached to his petition shows counsel did some investigation—it identified known witnesses and what information those witness might provide. Appellate counsel knew one witness believed Dyno Warner received immunity, yet counsel did not pursue that argument on direct appeal. Without an affidavit explaining appellate counsel's thoughts or actions regarding this witness or this potential argument, we have nothing but defendant's bald assertion that this was a viable defense appellate counsel should have pursued further. Based on the information before us, we can only infer appellate counsel made a strategic decision against presenting that argument and we will defer to counsel's decision. *People v. Edwards*, 2012 IL App (1st) 091651, ¶ 31, 966 N.E.2d 417 ("We will not second-guess counsel's decision to pursue certain issues on direct

appeal when nothing more than the defendant's bare contentions are offered to support his contention that 'meritorious' issues were left undeveloped or omitted.").

¶ 29        From what we can tell from the record and defendant's amended petition, both trial and appellate counsel inquired into a possible immunity agreement between the State and Warner. They just did not get the answer defendant wanted then and needs now to further his postconviction claims. Since the record positively rebuts defendant's claim that counsel failed to investigate whether Dyno Warner received immunity for his trial testimony, we find he failed to make a substantial showing counsel proved ineffective. *People v. Little*, 335 Ill. App. 3d 1046, 1052-53, 782 N.E.2d 957, 963-64 (2003). And since defendant failed to make a substantial showing of a constitutional violation—*i.e.*, ineffective assistance of counsel—the trial court properly dismissed his amended postconviction petition.

¶ 30                            3. *Supposed* Brady *Violation*

¶ 31        Defendant next contends the State violated *Brady v. Maryland*, 373 U.S. 83 (1963), when it failed to disclose it struck an immunity agreement with witness Dyno Warner, whereby Warner testified favorably for the State (linking defendant to the murder weapon) in exchange for the State dropping two criminal charges pending against Warner. We disagree.

¶ 32        "In *Brady*, the United States Supreme Court held an accused's due-process rights are violated when the prosecution suppresses evidence that is both favorable to the accused and material either to guilt or punishment." *People v. Snow*, 2012 IL App (4th) 110415, ¶ 35, 964 N.E.2d 1139. In order to prove a *Brady* violation, a defendant must show the prosecution suppressed evidence favorable to the defense and that evidence was material to defendant's guilt or punishment. *People v. Cloutier*, 191 Ill. 2d 392, 400, 732 N.E.2d 519, 524 (2000). Evidence favorable to the defense could include either exculpatory or impeachment evidence.

- 11 -

Consequently, "impeachment evidence falls within the *Brady* rule." *Snow*, 2012 IL App (4th) 110415, ¶ 35 (citing *United States v. Bagley*, 473 U.S. 667, 676 (1985)). "A *Brady* claim may arise in the following three circumstances: (1) where previously undisclosed evidence reveals the prosecution introduced trial testimony it knew or should have known was perjured, (2) where the State fails to comply with a defense request for disclosure of some specific exculpatory [or impeachment] evidence, and (3) where the State fails to voluntarily give the defense exculpatory [or impeachment] evidence never requested or requested only in a general manner." *Snow*, 2012 IL App (4th) 110415, ¶ 35 (citing *Kyles v. Whitley*, 514 U.S. 419, 433 (1995)).

¶ 33        Here, defendant argues the State failed to provide the defense with impeachment evidence, specifically, Dyno Warner received immunity in exchange for testifying against defendant. Defendant relies, in part, on the witness chart found in his appellate counsel's file. That document shows appellate counsel knew of a John Dallas, Jr., and made this notation about Dallas: "May've grown up with Dyno. According to Dallas, cops got to Dyno and promised him immunity for info about the knife." Defendant then relies, in part, on the fact that approximately two weeks after his murder convictions, the State dismissed two pending criminal charges against Warner. Putting together this information, defendant surmises the State and Warner made a pretrial agreement whereby he would testify in exchange for the State dismissing the pending charges. Defendant directs our attention to *People v. Torres*, 305 Ill. App. 3d 679, 712 N.E.2d 835 (1999), for the rule that *Brady* requires the State to inform defense counsel of any agreements between the State and a witness regarding any future prosecution of that witness because such an agreement relates to the witness's credibility and could be used by the defense to impeach the witness. Had the State disclosed Dyno Warner's immunity deal, according to defendant, Warner's credibility would have been undermined and the jury "may have

- 12 -

disregarded his testimony altogether." But defendant's conclusion assumes he made the requisite showing to invoke the *Torres* rule, *i.e.*, a pretrial immunity deal existed between Warner and the State.

¶ 34        We need not and cannot take as true defendant's factual allegation that an immunity deal existed between Dyno Warner and the State because the record positively rebuts that allegation. *Pendleton*, 223 Ill. 2d at 473 ("At the second stage of [postconviction] proceedings, all well-pleaded facts that are not positively rebutted by the trial record are to be taken as true ***."). As we noted above, Warner testified he received no deal and no guarantees from the State, which positively rebuts defendant's allegation. In reality, defendant presented no affidavits from either appellate counsel or John W. Dallas Jr., explaining how or why Dallas knew Warner received immunity from the State. He presents the witness chart, a hearsay document containing third party hearsay, with no explanation for why we should take the information as true. Defendant did attach Judici case histories to point to the fact of the State dismissing two pending charges against Dyno Warner as evidence the State made a *pretrial* immunity agreement with Warner that *Brady* required the State to disclose. But dismissing charges post-testimony does not necessarily mean there was a pre-testimony deal for immunity. In *Snow*, a State's witness "had several pending felony considerations" and "receive[d] 'light sentences and special considerations' " after he testified against the defendant. *Snow*, 2012 IL App (4th) 110415, ¶ 41. In a postconviction petition, Snow alleged the State's failure to disclose an agreement with the witness violated *Brady*'s rule. We held Snow failed to show a *Brady* violation, noting, "The government is free to reward witnesses for their cooperation with favorable treatment in pending criminal cases without disclosing to the defendant its intention to do so, *provided* that it does not promise anything to the witness prior to the testimony."

- 13 -

(Emphasis in original and internal quotation marks omitted.) *Snow*, 2012 IL App (4th) 110415, ¶ 41. Based on defendant's amended petition and the attachments, we cannot conclude the State promised Dyno Warner immunity prior to his testimony. Recall, Dyno Warner testified he received no deal and no guarantees from the State. Without a pretrial agreement, there was nothing for the State to disclose to the defense under *Brady*. Accordingly, defendant failed to make a substantial showing of a constitutional violation and the trial court properly dismissed his amended petition.

¶ 35                              B. Forensic Testing Denied

¶ 36          Defendant also appeals the trial court's denial of his request for forensic testing pursuant to section 116-3 of the Criminal Procedure Code (725 ILCS 5/116-3 (West 2014)). Illinois law allows a defendant to "make a motion before the trial court that entered the judgment of conviction in his or her case for the performance of fingerprint *** or forensic DNA testing *** on evidence that was secured in relation to the trial or guilty plea which resulted in his or her conviction." 725 ILCS 5/116-3(a) (West 2014). When a defendant makes the requisite statutory showings for fingerprint or forensic DNA testing, "[t]he trial court shall allow the testing" if it determines "the result of the testing has the scientific potential to produce new, noncumulative evidence materially relevant to the defendant's assertion of actual innocence *** even though the results may not completely exonerate the defendant." 725 ILCS 5/116-3(c)(1) (West 2014).

¶ 37          Defendant's amended petition requested forensic DNA testing on the following pieces of evidence: Charlie Brewer's pajama bottoms; two Caucasian body hairs on the pajama bottoms; fibers, debris, and hairs found on Dyno Warner's garden hose; and the burnt towel (including the hairs on the towel) retrieved from Dyno Warner's home. Defendant's petition requested fingerprint testing of the following: two latent lift cards from the exterior doorknob of

- 14 -

the Brewers' residence; a print card from the Brewers' bathroom sink top; and a print taken from a strip of paper. Finally, defendant's petition requested DNA testing and fingerprint analysis of the knife seized from Darrell Brewer's garage. The trial court denied defendant's motion because it "c[ould] not determine that the requested testing has the scientific potential to produce new, non-cumulative evidence materially relevant to defendant's assertion of actual innocence." We agree and affirm the trial court's order.

¶ 38        "[E]vidence which is 'materially relevant' to a defendant's claim of actual innocence is simply evidence which tends to significantly advance that claim." *People v. Savory*, 197 Ill. 2d 203, 213, 756 N.E.2d 804, 810-11 (2001). When deciding whether forensic DNA or fingerprint testing could produce new evidence materially relevant to the defendant's actual innocence claim, we must consider both the evidence presented at trial and the potential evidence defendant seeks from testing. Our supreme court meticulously detailed the evidence supporting defendant's murder convictions in *Kirchner*, 194 Ill. 2d 502, 509-16, some of which included: defendant's DNA was on a cigarette butt found in the Brewers' front yard; defendant's blood and Bonnie Brewer's blood found on the dashboard of defendant's girlfriend's car, which defendant drove the night of the murders; testimony linking the murder weapon (a knife) to defendant; expert testimony that the tip of that knife was found in Bonnie Brewer's skull; that knife had human blood on it; testimony that following the murders defendant removed his clothes and steel-toed boots and burned them in a firepit; two steel-toe pieces consistent with defendant's shoe size found in Dyno Warner's firepit; testimony defendant threw into a river a beige phone like the one found missing from the Brewers' home following the murders; law enforcement recovering the phone; defendant's statement to police that he was at home in bed during the murders which was refuted by several witnesses, including his girlfriend whom he lived with at

the time; and defendant's note to his girlfriend instructing her to lie about where he had been. This evidence and more supported the jury's guilty verdicts.

¶ 39    None of the potential new evidence defendant believes may result from DNA or fingerprint testing will undermine the above evidence or significantly advance his claim he did not commit these murders. In other words, none of the tested evidence will show defendant was not at the murder scene (the cigarette butt places him there) or will take away his and Bonnie Brewer's blood from his girlfriend's car. None of the potential new evidence from testing will change the fact he burned his clothing and boots the night of the murders or alter his suspicious behavior following the murders. Even if testing revealed human blood on Darrell Brewer's knife, that evidence would not undermine the evidence linking defendant to the murder weapon. Indeed, it would still be true that defendant took the knife that night and that knife's tip was found in Bonnie Brewer's skull. Rather, the evidence defendant seeks through the requested testing, *at best*, *might* link other people to the murder scene or suggest defendant had an accomplice. But the presence of these unidentified hairs, fibers, and fingerprints already suggest other people might have been in the home before the murders or that the defendant had help in stabbing the Brewers. In our view, the mere possible presence of other people at the murder scene or at Dyno Warner's firepit does not significantly further defendant's actual innocence claim.

¶ 40            C. Postconviction Counsel

¶ 41    Defendant lastly argues his postconviction counsel failed to provide him reasonable assistance as required by the Postconviction Act. We disagree.

¶ 42    "The right to counsel in postconviction proceedings is statutory rather than constitutional, and therefore a defendant is entitled only to the level of assistance guaranteed by

the [Postconviction] Act." *People v. Fathauer*, 2019 IL App (4th) 180241, ¶ 42, 146 N.E.3d 175 (citing *People v. Greer*, 212 Ill. 2d 192, 203, 817 N.E.2d 511, 518-19 (2004)). The Postconviction Act and, by extension, Illinois Supreme Court Rule 651(c) (eff. Feb. 6, 2013) guarantee defendants "a 'reasonable' level of assistance," (*People v. Beasley*, 2017 IL App (4th) 150291, ¶ 38, 85 N.E.3d 568) which is "a lower standard than that which the constitution requires at trial." *Fathauer*, 2019 IL App (4th) 180241, ¶ 42. "To ensure counsel provides a reasonable level of assistance, [Rule] 651(c) imposes [three] specific duties on postconviction counsel," including: "(1) consult with the defendant to ascertain his contentions of the deprivation of constitutional rights, (2) examine the record of the trial court proceedings, and (3) make any amendments to the defendant's *pro se* petition necessary to adequately present the defendant's claims." *Beasley*, 2017 IL App (4th) 150291, ¶ 38 (citing Ill. S. Ct. R. 651(c) (eff. Feb. 6, 2013)).

¶ 43	Confirmation that counsel fulfilled these three duties can be shown through the record or by a certificate from counsel. Ill. S. Ct. R. 651(c) (eff. Feb. 6, 2013). When counsel files " 'a facially valid Rule 651(c) certificate [there arises] a rebuttable presumption that counsel acted reasonably and complied with the rule.' " *Beasley*, 2017 IL App (4th) 150291, ¶ 39 (quoting *People v. Wallace*, 2016 IL App (1st) 142758, ¶ 25, 67 N.E.3d 976). While this record lacks a physical Rule 651(c) certificate, it suggests postconviction counsel filed one. At the start of the hearing on the State's motion to dismiss defendant's amended postconviction petition, the following exchange took place:

"THE COURT: A couple of preliminary matters before we hear argument.

Ms. Bergstrom. I did see—I hadn't noticed earlier, but I did see this morning you did file a 651(c) certificate with the amended petition; correct?

MS. BERGSTROM: Yes, Your Honor. Yes, I did, Your Honor."

Defendant argues this exchange proves insufficient to establish postconviction counsel filed a Rule 651(c) certificate and, therefore, he denies there arose a rebuttable presumption that counsel provided reasonable assistance. We disagree. Illinois Supreme Court Rule 651(c) (eff. Feb. 6, 2013) provides:

> "The record filed in that court *shall* contain a showing, which *may* be made by the certificate of petitioner's attorney, that the attorney has consulted with petitioner \*\*\*, has examined the record of the proceedings at the trial, and has made any amendments to the petitions filed *pro se* that are necessary for an adequate presentation of petitioner's contentions." (Emphases added.)

¶ 44    Viewing the above exchange between court and counsel in light of the rule's wording, we see the record contains the necessary "shall" showing for counsel's compliance with Rule 651(c). By using the permissive "may," we understand tangible, filed certificates included in the common law record are *one* way to satisfy the rule. But this dialogue between the court and postconviction counsel on the record can be another. See *People v. Johnson*, 154 Ill. 2d 227, 238, 609 N.E.2d 304, 309 (1993) (explaining "the absence of counsel's affidavit will be excused where the record demonstrates that counsel adequately fulfilled his duties as post-conviction counsel"); *People v. Guest*, 166 Ill. 2d 381, 412, 655 N.E.2d 873, 887 (1995) (stating "the absence of a Rule 651(c) certificate is harmless if the record shows that counsel met the requirements of the rule"). Since the court saw and acknowledged the Rule 651(c) certificate on

the record, coupled with postconviction counsel's obligation of candor to the court (to speak truthfully when confirming she filed it), we have confidence counsel provided a Rule 651(c) certificate, thereby creating a rebuttable presumption she rendered defendant reasonable assistance. See *Beasley*, 2017 IL App (4th) 150291, ¶ 39. Turning to defendant's specific arguments, we bear in mind he must rebut this presumption that his postconviction counsel provided him reasonable assistance. Defendant contends, "appointed counsel's failure to make the necessary amendments to [defendant's] *pro se* petition rebuts any presumption she complied with her obligations under the rule." Again, we disagree.

¶ 45        We note defendant expressly challenges just one of the three specific duties outlined under Rule 651(c)—making "any amendments to the petitions filed *pro se* that are necessary for an adequate presentation of petitioner's contentions." Ill. S. Ct. R. 651(c) (eff. Feb. 6, 2013). To be sure, defendant does not allege postconviction counsel failed to consult with him about his petition. And while defendant suggests postconviction counsel "did not fully examine the record," he does so only in support of his claim that postconviction counsel "failed to amend the section 116-3 motion to include the unidentified hair found on Bonnie's shirt." Since defendant limits this challenge to counsel's alleged failure to make necessary amendments, we confine our review to that Rule 651(c) duty alone.

¶ 46        We next note the record shows explicitly (and defendant's brief concedes implicitly) postconviction counsel amended defendant's *pro se* petition. Reading the two petitions and defendant's brief, we see counsel altered some arguments while adding others, and she attached additional evidence. Defendant challenges the substance or adequacy of these amendments.

¶ 47    Defendant first argues postconviction counsel failed to attach to the amended petition an "affidavit from appellate counsel substantiating the assertions in the investigative report," namely, that Dyno Warner received immunity in exchange for his trial testimony. Without explaining why, defendant assumes this affidavit was "easily obtainable" for postconviction counsel. Notably, he did not attach this "easily obtainable" affidavit to his *pro se* petition. Perhaps defendant presumes postconviction counsel simply did not try to get an affidavit from defendant's appellate counsel. We cannot indulge the same presumption. Indeed, if counsel fails to attach an affidavit or other documents to an amended *pro se* petition during second-stage postconviction proceedings, we "may reasonably presume that post-conviction counsel made a concerted effort to obtain affidavits in support of the post-conviction claims, but was unable to do so." *Johnson*, 154 Ill. 2d at 241. In fact, we are more inclined to presume postconviction counsel did not shirk her duty to obtain affidavits when she found and attached other evidence to support defendant's claims, which is precisely what happened here. Defendant believed, based on a double (or even triple) hearsay document, that Dyno Warner received immunity in exchange for his testimony against him. Defendant further believed his appellate counsel knew this to be true and could attest to the alleged immunity deal. Postconviction counsel acknowledged she did not get an affidavit from appellate counsel, though she did not elaborate on reasons why. However, she provided evidence to support defendant's claim, namely Judici case histories showing the State dismissed two pending charges against Warner less than three weeks after he testified against defendant. These documents supported the hearsay contained in the witness list defendant attached to his *pro se* petition. We do not know why postconviction counsel did not (or could not) get an affidavit from appellate counsel, but we presume she provided reasonable assistance, especially since she did obtain and attach new

evidence to support defendant's claim Dyno Warner received immunity for his testimony. Defendant's unsupported claim that postconviction counsel failed to get an "easily obtainable" affidavit does not rebut the presumption counsel provided reasonable assistance.

¶ 48 Next, defendant argues postconviction counsel "abandoned two meritorious claims [defendant] raised *pro se*—specifically, his claims that multiple non-testifying witnesses heard Warner 'brag' about his involvement in the crime, and that Barbara McMillan heard two police officers say [defendant] was 'set up.' " We take the latter first. Defendant's *pro se* petition acknowledged that Barbara McMillan would not reduce her claims to an affidavit and eventually stopped communicating with defendant's mother. The only available supporting evidence for the claim that two police officers said defendant had been set up was an affidavit from defendant's mother, which regurgitated McMillan's account. In reality, McMillan's information is based on her subjective belief that defendant "would never have committed those murders" and double hearsay. Rule 651(c) requires counsel "to present a petitioner's claims in appropriate legal form." (Emphasis omitted.) *Johnson*, 154 Ill. 2d at 247. McMillan's refusal to communicate further made it impossible to present this claim in an appropriate legal form. As we said *supra*, we certainly cannot conclude an attorney renders ineffective assistance when he or she fails to present inadmissible evidence. Accordingly, in our view, it was not unreasonable for postconviction counsel to abandon a claim without an evidentiary basis.

¶ 49 We turn now to the former claim postconviction counsel excised from defendant's postconviction petition, *i.e.*, four witnesses heard Dyno Warner bragging about his involvement in this crime. Defendant reasons that since this "claim was supported by the same investigative report *** counsel relied upon to allege that Warner was offered immunity in exchange for his

- 21 -

testimony," then "[t]here was no reason for *** counsel to raise one claim, and not the other." Defendant's argument falls flat.

¶ 50            Defendant's reasoning notwithstanding, his *pro se* petition presents one overarching claim relating to Dyno Warner (not separate claims)—and that one claim is, defendant's trial and appellate counsel were ineffective for failing to investigate Warner. If they had, according to defendant, they would have learned Warner received immunity for his testimony against petitioner and Warner "bragged" about his involvement in the Brewer murders to four people: Tim Conner, Ashley Evans, Amanda Wheeler, and David M. White. Overall, defendant's *pro se* petition alleged "newly discovered evidence" rendered Dyno Warner's testimony not credible evidence against him because he received immunity and bragged about his involvement in the murders. The amended petition still presented this claim—trial and appellate counsel rendered ineffective assistance by failing to investigate Warner—albeit it left out the latter part about Warner's boasting. This was not unreasonable assistance from postconviction counsel. There was no additional evidence for the claim that Warner bragged about his involvement in the Brewers' murder. Unlike the alleged immunity-deal argument, where counsel attached Warner's case history showing when the charges were dropped, there was no independent evidence to support the boasting claim. Defendant believes postconviction counsel should have obtained affidavits from each of the four named witnesses. As we have said, when there are no affidavits attached to an amended postconviction petition, we "may reasonably presume that post-conviction counsel made a concerted effort to obtain affidavits in support of the post-conviction claims, but was unable to do so." *Johnson*, 154 Ill. 2d at 241. As this presumption is not flatly contradicted by the record, we apply it here. See *Johnson*, 154 Ill. 2d at 241. In our view, it was not unreasonable for postconviction counsel to omit one part of

defendant's ineffective assistance of counsel claim as it relates to Dyno Warner when there was no additional evidence to support it. By adding what evidence she did (Warner's case history from Douglas County), postconviction counsel made a necessary amendment to adequately present defendant's argument *vis-à-vis* Dyno Warner. Indeed, the amended petition still questioned Dyno Warner's credibility and motivation as a witness. Counsel's decision to drop unsupported allegations was not unreasonable assistance. See *People v. Custer*, 2019 IL 123339, ¶ 38, ("[Rule 651(c)'s] requirements do not include bolstering every claim presented in a petitioner's *pro se* postconviction petition *** or presenting each and every witness or shred of evidence the petitioner believes could potentially support his position."); *People v. Pendleton*, 223 Ill. 2d 458, 472, 861 N.E.2d 999, 1007 (2006) ("Fulfillment of [Rule 651(c)'s] third obligation does not require counsel to advance frivolous or spurious claims on defendant's behalf.").

¶ 51    Defendant also contends postconviction counsel provided unreasonable assistance by raising a claim contradicted by the record—"A report from Forensic Science Associates, dated June 18, 2003, re-examined the DNA evidence from a cigarette butt excluded [defendant] as a source." Actually, the referenced report found defendant "cannot be eliminated as the source of the epithelial cells from the Marlboro cigarette butt from the scene." Defendant believes this misstatement undermined his credibility before the court. We disagree. The referenced report did contain helpful information for defendant. It noted he could be eliminated as the source of other forensic evidence found at the murder scene. It appears postconviction counsel misread or misunderstood one sentence in the report. We do not find this error fatal (or even unreasonable) because counsel's mistake came as part of the petition's "request[] for Fingerprint and DNA testing under 715 ILCS 5/116-3 regarding his actual innocence." Defendant does not challenge

counsel's request for forensic and DNA testing as unreasonable, but he challenges one sentence of that request. By noting prior DNA analysis excluded defendant as the source of some DNA evidence and identifying evidence that could now be tested, postconviction counsel made the necessary amendment to defendant's *pro se* claim that he was actually innocent. Counsel's misstatement did not render those amendments unreasonable. The court saw the misstatement, corrected it, and still considered defendant's claim for forensic testing. Counsel's scrivener's error or misreading did not rebut the presumption counsel provided reasonable assistance.

¶ 52 Finally, defendant argues postconviction counsel rendered unreasonable assistance by "fail[ing] to include all the police reports [he] attached to his *pro se* motion for forensic testing to establish that the police, in fact, seized all the evidence he wished to test." We see no reason to belabor this point. Postconviction counsel attached to the amended petition many of the police reports defendant included with this *pro se* petition. Counsel omitted approximately 13 pages of police reports relating to Charles Brewer's pajama bottoms and a water nozzle and a towel found at Dyno Warner's home. Yet, counsel still requested forensic testing for those items, and testing was not denied for failure to attach those 13 pages of police reports. The trial court denied defendant's request because it "[could] not determine that the requested testing has the scientific potential to produce new, non-cumulative evidence materially relevant to defendant's assertion of actual innocence." We presume postconviction counsel provided reasonable assistance. Counsel's failure to include police reports that had no effect whatsoever on the trial court's ultimate decision does not rebut that presumption.

¶ 53 We conclude defendant failed to meet his burden of rebutting the presumption postconviction counsel provided him reasonable assistance. Postconviction counsel made the

necessary amendments to defendant's *pro se* petition to adequately present his claims. This is a low bar and counsel cleared it.

¶ 54                                          III. CONCLUSION

¶ 55         For the reasons stated, we affirm the trial court's judgment.

¶ 56         Affirmed.