NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2024 IL App (4th) 231181-U

NO. 4-23-1181

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
December 10, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | McLean County |
| KEON E. SPILLER, | ) | No. 22CF421 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | William A. Yoder, |
| | ) | Judge Presiding. |

JUSTICE STEIGMANN delivered the judgment of the court.
Justices Lannerd and Vancil concurred in the judgment.

**ORDER**

¶ 1    *Held:* The appellate court affirmed defendant's convictions and sentences.

¶ 2    In April 2022, defendant, Keon E. Spiller, was charged with (1) possession of a controlled substance (3,4-methylenedioxymethamphetamine (MDMA), commonly known as ecstasy) (720 ILCS 570/402(c) (West 2022)) and (2) unlawful possession of cannabis with the intent to deliver (720 ILCS 550/5(d) (West 2022)) following a traffic stop during which a police officer searched defendant's car, recovering cannabis and pills containing MDMA. In May 2023, a jury found defendant guilty of both counts, and the trial court later sentenced defendant to three years' incarceration on the simple possession count and nine years on the possession with the intent to deliver count, with both sentences to run concurrently.

¶ 3    Defendant appeals, arguing (1) the State failed to prove that he was guilty of both charges beyond a reasonable doubt, (2) defense counsel provided ineffective assistance of

counsel by failing file a motion to suppress when the sole basis for the search was the smell of cannabis, and (3) his sentences were excessive. We affirm.

¶ 4                                    I. BACKGROUND

¶ 5                                   A. The Charges

¶ 6           In April 2022, defendant was charged with (1) possession of a controlled substance (MDMA) (count I), (2) possession of a controlled substance (methamphetamine) (count II), (3) unlawful possession of cannabis with the intent to deliver (count III), and (4) having an obstructed window (window tint) (625 ILCS 5/12-503(a-5) (West 2022)) (count IV) following a traffic stop during which an officer searched defendant's car, recovering cannabis and pills containing MDMA. The State later dismissed counts II and IV.

¶ 7                                   B. The Jury Trial

¶ 8           In May 2023, the trial court conducted defendant's jury trial.

¶ 9                                   1. *Ronald Webb*

¶ 10          Ronald Webb, a police officer with the Normal Police Department, testified that on April 29, 2022, he conducted a traffic stop on defendant's white GMC Acadia because the car "had illegal window [t]int. It was completely dark on all side [windows] and the back where you couldn't see through." Webb followed behind defendant's vehicle and activated his emergency lights near the Sugar Creek Alzheimer's Special Care Center. Webb testified, "I pulled in behind him. The vehicle pulled into the Sugar Creek Alzheimer's [Special Care Center's] parking lot. Pulled in behind him." Webb then got out of his squad car and approached the driver's side of the vehicle to speak with the driver. Inside the vehicle were three individuals: defendant was driving the vehicle, Nakolis Spiller was sitting in the front passenger seat, and Curtis Banks was seated in the back passenger seat.

¶ 11 Webb testified, "When I approached the stopped vehicle, I instantly as I started speaking to the driver, got a smell of cannabis. And so[,] I continued just started my normal process of introducing myself, explaining the reason for the traffic stop and then asking for identification and insurance." Defendant provided a paper copy of his State of Illinois driver's license, as well as his insurance. He also told Webb that the car belonged to him. Webb explained to defendant, "I had an odor of cannabis—or I could smell an odor of cannabis." He asked defendant if there was any cannabis in the vehicle, and defendant said there was none. Webb told defendant to step out of the car because he was going to search it. Defendant asked why the car would be searched, and Webb answered that he had probable cause to search due to the odor of cannabis. Defendant asserted that the smell of cannabis did not give probable cause to search his vehicle, but Webb insisted that it did.

¶ 12 Eventually, defendant exited the car when officers opened his car door and grabbed him by the arm. The interaction was captured on Webb's body camera, and the video was entered into evidence and played for the jury.

¶ 13 Webb testified that he then searched the vehicle and found, "[b]y the shifter knob right in front of the center console," a small plastic bag containing cannabis and other similarly sized small plastic bags containing cannabis in different colors on the "front passenger's floorboard." The bags were not sealed. Another officer arrived during the traffic stop and also searched defendant's car, finding a Gucci bag that contained 12 bags of cannabis and an Ice Breakers breath mints container with pills that field tested positive for MDMA.

¶ 14 Webb stated that he "collected all of the drugs and items, like the [Gucci] bag. Packaged them in envelopes, like large envelopes. Labeled where each item was located in the vehicle and what was inside the envelope." He then transported the items back to the police

department "for sealing and evidence."

¶ 15 Webb further testified that defendant was arrested and interviewed at the Normal Police Department. The interview was video and audio recorded, a copy of which was entered into evidence and played for the jury. During the interview, Webb told defendant that he was being charged with possession of cannabis with the intent to deliver. According to Webb, defendant "said something along the lines of that's it, asking a question if that's all his charges." When Webb told defendant that he was being charged with the possession of MDMA, he did not deny possessing the pills.

¶ 16 Defendant said that he had $500 in his pocket. In Webb's experience, he believed that "was a large amount of cash," indicating that defendant was not just possessing drugs but selling them.

¶ 17 On cross-examination, Webb acknowledged that when Nakolis was searched, he had 65 grams of cannabis in his "buttocks."

¶ 18                    2. *Jordan Krueger*

¶ 19 Jordan Krueger, a police officer with the Normal Police Department, testified that on April 20, 2022, he was the second officer to arrive at the traffic stop. When he arrived, he saw three men sitting in the parked car. As he approached the car, he smelled "an odor of cannabis emitting from the vehicle." He searched the vehicle and found a tan Gucci bag in the center of the vehicle's back seat floorboard, which was admitted into evidence. Krueger opened the bag and searched it, finding eight "different baggies of plastic baggies that contained cannabis. And then there was an [Ice Breakers] mint case in there." Inside the mint case were several pills, which contained MDMA. He also found multiple baggies containing cannabis on the front floorboard of the car and a white jar with loose cannabis in the glove box. Krueger did not talk to

defendant or the passengers about having found the drugs in the car. The car was then towed.

¶ 20                                             3. *Paul Jones*

¶ 21          On April 29, 2022, Paul Jones, a detective with the Bloomington Police Department, interviewed defendant at the Normal Police Department prior to Webb's interview. A recording of Jones's interview with defendant was entered into evidence and played for the jury. Jones testified as follows:

> "Within the video clip that just played he acknowledged the fact that there was a bag that he was familiar with. Yes. I don't know if we specifically talked about Gucci, but there were a few different bags in the car. We had already talked about one, and we were referring to another one."

¶ 22          Jones also testified that, during the interview, defendant said "that he is a cannabis user and that he—when I mentioned the bag, he talked about marijuana that he alleged came from a cannabis dispensary and made a comment about how the dispensary would be able to prove that he purchased those there."

¶ 23                                             4. *Joseph Rizzi*

¶ 24          Joseph Rizzi, a police officer with the Bloomington Police Department, testified that on April 29, 2022, he attended a briefing at the beginning of his shift, informing him "that there was going to be a large party, a gathering at Underwood Park in Normal." He was then "assigned as a surveillance unit in a covert capacity to go out and monitor the activities that were going on at the party." He was in plain clothes. Rizzi testified that he arrived at the park around 6 p.m. and stated, "Well, at that time I arrived a little bit before the activities were going to begin, and I found a parking spot, parked, and jumped into the back of the van, and was waiting to see what all was going to go on."

¶ 25     About an hour into the party, he observed a white GMC Acadia parked a few spots away in the parking lot. He testified, "It arrived and no one got out for approximately 10 to 15 minutes. People were just kind of sitting inside of the car." Eventually, defendant, Nakolis, and Banks all exited the Acadia. Defendant had been sitting in the driver's seat, and when he got out of the car, he was wearing a brown Gucci bag, which Rizzi described as "a purse or a satchel or a Gucci bag with like a single strap." Rizzi identified this bag as the one found in the defendant's car after the traffic stop. Defendant, Nakolis, and Banks all walked towards the pavilion where the party was taking place. There were about a hundred people at the party.

¶ 26     Rizzi testified that he then notified "Normal Police Department officers of [his] observations at the party, specifically [defendant's] arrival and that he was wearing that bag." Normal police officers then responded to the party to "shut it down" because the organizers were serving alcohol. Defendant was at the party when police officers arrived. Around that time, defendant returned to his car with Nakolis and Banks, who was now wearing the Gucci bag. When asked why he did not record defendant, Rizzi stated as follows:

> "At that time when I had gone out to this party, it was mainly to keep an eye on the activities to make sure things hadn't gotten out of hand[,] which had happened at a few of these instances in the past few weeks.
>
> So no, at the arrival of [defendant,] I was more concerned with my observations and notifying the marked units that were going to be in the area of what I had seen. So, I didn't really think of grabbing it and recording."

¶ 27                    5. *Angela Nealand*

¶ 28     Angela Nealand testified that she worked as a forensic scientist at the Illinois State Police Forensic Science Laboratory in Morton, Illinois. She conducted a chemical analysis

of the pills found in the Ice Breakers container and concluded that they tested positive for MDMA. She also analyzed the 12 bags of suspected cannabis found by police officers. She tested and weighed the contents of nine of the bags and concluded that they contained 32.775 grams of cannabis. The other three bags were not tested, but their contents weighed 10.876 grams.

¶ 29    Defendant did not testify.

¶ 30    The jury found defendant guilty of possession of a controlled substance and unlawful possession of cannabis with the intent to deliver. The State then moved to revoke defendant's bond, which the trial court granted. As the court announced its decision, defendant asked the court if he could be released from custody until his sentencing hearing. After the court denied his request, defendant ran from the courtroom. Eventually, he was returned to custody by courthouse security.

¶ 31                    C. Sentencing

¶ 32    In July 2023, the trial court conducted defendant's sentencing hearing. The court began the hearing by addressing defendant's motion for a new trial. After hearing arguments from the parties, the court denied the motion.

¶ 33    The trial court then proceeded to the sentencing portion of the hearing, stating that it had received and reviewed the presentence investigation report (PSI). The court asked if the parties had received the PSI and if they had any additions or corrections. The State noted that defendant had a pending criminal case in Cook County that had been set for a status hearing and asked for the PSI to reflect the date of that hearing. Defense counsel did not refute the State's representations and had nothing to add. She informed the court that she had reviewed the PSI with defendant. The court then stated that it had admitted the PSI into evidence as updated by the

- 7 -

State.

¶ 34        The PSI contained, among other things, information about defendant's juvenile and criminal history. At the time of the sentencing hearing, defendant was 23 years old. His juvenile history included adjudications for (1) resisting a police officer in 2011, (2) theft and battery in 2012, (3) retail theft in 2013, (4) aggravated battery, mob action, robbery, and battery in 2013, (5) retail theft in 2014, (6) aggravated assault, aggravated battery, and criminal trespass to land in 2014, (7) two counts of aggravated battery in 2014, (8) aggravated unlawful use of a weapon (UUW) in 2015, (9) criminal damage to property in 2016, and (10) retail theft in 2016. His most serious adult conviction was in 2016 for armed robbery, for which he was sentenced to seven years in prison. Defendant had multiple major rule infractions while he was in prison, which included possession of drugs and drug paraphernalia, gang activity, and giving false information to an Illinois Department of Corrections employee.

¶ 35                          1. *The State's Evidence*

¶ 36        The State called Webb to testify regarding the traffic stop and the search of defendant's vehicle. Webb testified that in addition to the drugs, he also found "a pistol with a loaded magazine and an AR-15 pistol and a loaded magazine. Neither magazine was inserted into the firearm." The first gun was located in the center console of the car, and the AR-15 was in a bag in the back seat of the car. Webb also stated that the front seat passenger, Nakolis, indicated that he had a firearm owners identification card.

¶ 37        The State also called Deputy Niko Lullo of the McLean County Sheriff's Office, who testified that he was a court security officer at defendant's trial in May 2023. When defendant was ordered into the custody of the sheriff, defendant "became upset and was trying to speak to the judge at which point the judge again remanded him into my custody with the

- 8 -

sheriff's office, and he proceeded to take flight from the courtroom." Defendant pushed a chair into the center aisle as he ran, causing Lullo to trip and sustain some scrapes to his knees. Eventually, defendant was apprehended while still in the courthouse.

¶ 38    The State also played the audio of three phone calls that defendant made while in the custody of the McLean County Detention Facility in April 2023. During the phone calls, defendant discussed generally his beliefs that the trial was unfair and the trial judge was racist and how he could not keep himself from fleeing the courtroom.

¶ 39                    2. *Defendant's Evidence*

¶ 40    In mitigation, defendant tendered character-reference letters and a culinary arts certificate he had earned while in custody. Defense counsel argued that defendant had a rough life at an early age, as well as mental health issues that defendant had been working with doctors to correct. Defendant wrote a letter for his statement in allocution to the trial court, as well. In allocution, defendant stated in court as follows: "I'd just ask that you be fair and just take everything I said in that letter into consideration and give me a chance to prove to the Court that I can do good in the real world."

¶ 41                    3. *The Trial Court's Sentence*

¶ 42    The trial court stated that it had considered the PSI, the evidence, and the arguments, as well as defendant's written and oral statement in allocution and the necessary statutory factors in aggravation and mitigation. However, the court stated it would not consider defendant's flight from the courtroom because defendant had been charged separately for that conduct. The court stated, "He can—he's presumed innocent of those allegations, and those can be presented—that case can be presented and pursued if chosen by the State, and they've at this point chosen to do that."

¶ 43 The trial court then stated that it had considered defendant's relative youth at 23 years old, noting as follows:

"I have considered the Defendant's age and impetuosity, level of maturity. I've considered whether he was subject to outside pressure including peer pressure, family pressure, negative influences. I've considered the Defendant's family, home environment, education and social background, and any history of parental neglect, physical abuse, or other childhood trauma."

¶ 44 The trial court also noted that defendant's involvement with the justice system had "consistently increased in its severity" ever since it started at 10 years old "with him battering a police officer." Further, "There has not been a period in the last 13 years it seems where the Defendant hasn't been involved in the justice system in one way or another, and at his young age it's hard to imagine a much more serious prior record."

¶ 45 The trial court found "that a period of imprisonment *** is necessary for the protection of the public" and "a significant sentence is necessary for the protection of the public." Ultimately, the court sentenced defendant to three years in prison on the possession of a controlled substance charge and nine years in prison on the possession of cannabis with the intent to deliver charge, with the sentences to run concurrently.

¶ 46 Defendant then stated, "Judge, you're racist, you know that. Whatever you do, I don't give a fuck."

¶ 47 This appeal followed.

¶ 48 II. ANALYSIS

¶ 49 Defendant appeals, arguing (1) the State failed to prove that he was guilty of both charges beyond a reasonable doubt, (2) defense counsel provided ineffective assistance of

counsel by failing to file a motion to suppress when the sole basis for the search was the smell of cannabis, and (3) his sentences were excessive. We affirm.

¶ 50                              A. The Evidence Was Sufficient

¶ 51          Defendant first argues that the evidence at trial was insufficient to show beyond a reasonable doubt that he (1) possessed the MDMA or (2) possessed the cannabis with the intent to deliver. We disagree.

¶ 52                              1. *The Applicable Law and Standard of Review*

¶ 53          To establish possession of a controlled substance with the intent to deliver, the State must prove (1) defendant had knowledge of the presence of a controlled substance, (2) the controlled substance was within the immediate control or possession of defendant, and (3) defendant had the intent to deliver the controlled substance. *People v. Ellison*, 2013 IL App (1st) 101261, ¶ 13; 720 ILCS 570/401 (West 2022). Simple possession of a controlled substance requires the same elements, but without the intent to deliver. See 720 ILCS 570/402(c) (West 2022); 720 ILCS 550/5(d) (West 2022).

¶ 54          A defendant's possession of contraband can be either actual or constructive. *People v. Givens*, 237 Ill. 2d 311, 335 (2010). Actual possession requires proof that the defendant had personal dominion over the contraband. *Id.* Mere proximity is insufficient to establish actual possession. *People v. Schmalz*, 194 Ill. 2d 75, 81 (2000). However, the State can prove constructive possession by establishing that the defendant (1) had knowledge of the contraband and (2) exercised immediate and exclusive control over the area where the contraband was found. *People v. Maldonado*, 2015 IL App (1st) 131874, ¶ 23. Alternatively, when the defendant does not control the premises or location where the contraband was found, the State must prove through circumstantial evidence that the defendant had both the "intent and

- 11 -

capability to maintain control and dominion" over the contraband. *People v. Frieberg*, 147 Ill. 2d 326, 361 (1992). Although possession must be "exclusive," it may simultaneously be joint. *Schmalz*, 194 Ill. 2d at 82.

¶ 55    We review challenges to the sufficiency of the evidence by determining "whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *People v. Harvey*, 2024 IL 129357, ¶ 19. In so doing, we review the evidence in the light most favorable to the State, which means "that all reasonable inferences from the record in favor of the [State] will be allowed." *Id.*

¶ 56                              2. *This Case*

¶ 57    First, defendant contends that the State failed to prove beyond a reasonable doubt that he had knowledge and possession of the cannabis and MDMA found in the Gucci bag because "no circumstantial evidence supported the State's theory that [defendant] knew of the contents in the Gucci bag." However, contraband being found in a vehicle under the control of defendant gives rise to an inference of knowledge and possession by him, which alone may be sufficient to sustain a conviction for unlawful possession of controlled substances. *People v. Warren*, 2016 IL App (4th) 120721-B, ¶¶ 62, 65. In addition, the trier of fact is not required to disregard inferences that flow normally from the evidence before it and need not raise every possible explanation consistent with innocence to the level of reasonable doubt. *People v. Hines*, 2021 IL App (1st) 191378, ¶ 36.

¶ 58    Here defendant's possession and knowledge of the contents of the Gucci bag can be reasonably inferred by (1) his physically possessing the bag when he arrived at the party in the park—specifically, that he was wearing the Gucci bag when he got out of the Acadia; (2) the Gucci bag's presence in his car along with other small plastic bags of cannabis near the gear

shift, on the floorboard of the car, and in the glove compartment, which were similar in appearance to the plastic bags in the Gucci bag; and (3) the strong odor of cannabis emanating from the car. Further, during the traffic stop, defendant told Webb there was no cannabis in the car, despite having cannabis littered around his vehicle, including within his reach. In addition, the jury was able to observe videos of defendant's behavior during the traffic stop and his statements to officers while at the police station. Ultimately, based on this evidence, a rational jury could have found that defendant possessed and had knowledge of the cannabis and MDMA.

¶ 59 Second, the evidence of defendant's possession of cannabis with the intent to deliver was sufficient to sustain his conviction. "Direct evidence of intent to deliver is rare, and circumstantial evidence is commonly used to prove intent." *People v. Thomas*, 2019 IL App (2d) 160767, ¶ 24. Factors to consider for inferring intent include but are not limited to the following:

> "(1) whether the quantity of the controlled substance is too large to be viewed as being for personal consumption; (2) the high degree of purity of the drugs; (3) the possession of weapons; (4) the possession of large amounts of cash; (5) the possession of police scanners, beepers, or cellular telephones; (6) the possession of drug paraphernalia; and (7) the manner in which the drugs were packaged." *Id.*

¶ 60 Here, defendant was charged with possession of 12 pouches of cannabis found in the Gucci bag. Nine of the packages were tested and determined to contain 32.775 grams of cannabis, which exceeds the permissible limit for possession of cannabis. See 410 ILCS 705/10-10(a)(1) (West 2022). Further, circumstantial evidence supports an inference that defendant intended to deliver the cannabis: (1) defendant had $500 on his person, an amount which could be considered a large amount of cash to carry, (2) the bags of cannabis were

individually packaged in smaller bags, (3) the bags of cannabis were found alongside pills of MDMA in the Gucci bag, and (4) defendant brought the bag of drugs to a large gathering of people who were drinking heavily, suggesting that he intended to sell the cannabis at that party. The fact that cannabis was also found in the glove box of defendant's car and around the cabin supports the inference that defendant had brought the cannabis to the party, rather than acquiring it there for his own personal use.

¶ 61    Looking at the evidence in the light most favorable to the State, we conclude that the evidence is sufficient for a rational trier of fact to have found the essential elements of the offenses beyond a reasonable doubt.

¶ 62        B. Defendant's Sentence Was Not an Abuse of Discretion

¶ 63    Defendant argues that his sentences were excessive "in light of the nature of the offense and [his] extensive mental health issues." We disagree.

¶ 64            1. *The Applicable Law and Standard of Review*

¶ 65    When determining an appropriate sentence, the trial court may consider "(1) the defendant's history, character, and rehabilitative potential; (2) the seriousness of the offense; (3) the need to protect society; and (4) the need for punishment and deterrence." *People v. Klein*, 2022 IL App (4th) 200599, ¶ 34. The court must consider the statutory factors listed in the Unified Code of Corrections (Code). See 730 ILCS 5/5-5-3.2 (West 2022); *id.* § 5-5-3.1; *People v. Brunner*, 2012 IL App (4th) 100708, ¶ 49.

¶ 66    The trial court "has broad discretionary powers in imposing a sentence." *People v. Alexander*, 239 Ill. 2d 205, 212 (2010). "A reviewing court gives substantial deference to the trial court's sentencing decision because the trial judge, having observed the defendant and the proceedings, is in a much better position to consider factors such as the defendant's credibility,

demeanor, moral character, mentality, environment, habits, and age." *People v. Snyder*, 2011 IL 111382, ¶ 36. Accordingly, we will not reverse a defendant's sentence absent an abuse of discretion. *Id.*

¶ 67 A reviewing court may reduce a sentence if it is excessive. Ill. S. Ct. R. 615(b)(4) (eff. Jan. 1, 1967). "A sentence is deemed excessive *** only where *** the sentence is greatly at variance with the spirit and purpose of the law, or manifestly disproportionate to the nature of the offense." (Internal quotation marks omitted.) *People v. Evans*, 373 Ill. App. 3d 948, 968 (2007). However, "a reviewing court presumes that a sentence imposed within the statutory range provided by the legislature is proper." *People v. Musgrave*, 2019 IL App (4th) 170106, ¶ 56.

¶ 68 2. *This Case*

¶ 69 Here, defendant argues that his sentences were excessive—three years in prison for the possession of MDMA and nine years in prison for the possession of cannabis with the intent to deliver—because the three-year term was the maximum he could receive (720 ILCS 570/402(c) (West 2022); 730 ILCS 5/5-4.5-45(a) (West 2022)) and the nine-year term was only one year short of the maximum available sentence (720 ILCS 550/5(d) (West 2022); 730 ILCS 5/5-4.5-40(a) (West 2022)). He emphasizes that the offenses were nonviolent, the amounts of the drugs were relatively small, and "cannabis is arguably less harmful to society than other drugs." He further argues that his sentence was excessive because the trial court did not adequately consider his mental health as a factor in mitigation. We disagree with all of defendant's contentions.

¶ 70 Defendant's argument that the nature of the crimes was undeserving of near-maximum prison sentences ignores the other factors that a trial court must consider when

crafting a defendant's sentence, such as (1) the defendant's history, character, and rehabilitative potential, (2) the need to protect society, and (3) the need for punishment and deterrence. *People v. Hibbler*, 2019 IL App (4th) 160897, ¶ 64. Here, there is no indication that the trial court failed to take any of these factors into consideration or misapplied any factors. Instead, the court explicitly stated that it had considered "all relevant factors a court should consider." Further, the court stated the following:

> "I have considered the Defendant's potential for rehabilitation or evidence of rehabilitation or both, the circumstances of the offense, the Defendant's degree of participation and specific role in the offense including the level of planning by the Defendant before the offense. I've considered whether the Defendant was able to meaningfully participate in his defense, his prior juvenile or criminal history, and the Court has considered all other relevant factors again that should be considered in imposing a sentence in a serious felony case."

¶ 71 Regarding defendant's juvenile and criminal history and rehabilitative potential, the trial court found this factor especially problematic, stating, "There has not been a period in the last 13 years it seems where the Defendant hasn't been involved in the justice system in one way or another, and at his young age it's hard to imagine a much more serious prior record." The court further found defendant had problems staying out of trouble for more than a month or two at a time and "he's just not interested in complying with the law basically." These findings are well supported by defendant's prior record, which included juvenile adjudications for resisting a police officer, battery, theft, retail theft (three adjudications), aggravated battery (three adjudications), robbery, aggravated assault, criminal trespass to land, and aggravated UUW. Defendant also had a conviction for armed robbery as an adult and multiple violations and

revocations of probation.

¶ 72      Regarding his mental health, defendant fails to point to anything in the record to overcome the presumption that the trial court adequately considered all of the mitigating evidence presented. See *People v. Butler*, 2013 IL App (1st) 120923, ¶ 31 ("In order to rebut this presumption, the defendant must present some indication, other than the sentence imposed, that the trial court did not consider the mitigating evidence."). Further, the existence of mitigating factors does not require the court to reduce a sentence from the maximum or to impose a minimum sentence. *People v. Halerwicz*, 2013 IL App (4th) 120388, ¶ 42.

¶ 73      The trial court heard the extensive description in the PSI regarding defendant's mental health issues. This court has regarded mental health issues as a "double-edged sword," which the trial court is free to consider either in mitigation or aggravation. *People v. Brunner*, 2012 IL App (4th) 100708, ¶¶ 64-66 (noting that the trial court is not required to consider defendant's mental health issues as a mitigating factor and the legislature has not listed mental health issues as a mitigating factor in the Code).

¶ 74      Ultimately, defendant's contention that the trial court did not "adequately" consider certain factors amounts simply to a request for this court to reweigh the evidence and substitute our judgment for that of the court, which we will not do. The record shows that the court fully considered all relevant factors, including the seriousness of the offense, defendant's age and family background, defendant's prior record, and defendant's mental health history. Accordingly, the court did not abuse its discretion by imposing defendant's sentence.

¶ 75                    C. Defense Counsel Was Not Ineffective

¶ 76      Defendant argues that defense counsel was ineffective for failing to file and litigate a motion to suppress because the probable cause for the police officers' search of his

vehicle was based solely on the odor of cannabis. In light of the supreme court's recent decision in *People v. Redmond*, 2024 IL 129201, ¶ 54 (holding that the odor of burnt cannabis alone does not provide probable cause for a vehicle search), defendant contends that had defense counsel filed a motion to suppress the evidence obtained by the search, the issue would have been preserved for our review and the holding in *Redmond* would have required this court to vacate defendant's conviction and remand for a new trial. Accordingly, defendant argues that counsel's forfeiting the issue for appellate review by failing to preserve it in a motion to suppress constituted ineffective assistance of counsel. We disagree.

¶ 77                    1. *The Applicable Law and Standard of Review*

¶ 78          Claims of ineffective assistance of counsel are analyzed under the familiar framework established in *Strickland v. Washington*, 466 U.S. 668, 674 (1984). *People v. Henderson*, 2013 IL 114040, ¶ 11. To prevail on a claim of ineffective assistance of counsel, a defendant must show that (1) defense counsel's performance was deficient and (2) but for counsel's unprofessional errors, there is a reasonable probability that the outcome of the proceedings would have been different. *Id.* "A defendant's failure to establish either prong of the *Strickland* test precludes a finding of ineffective assistance of counsel." (Internal quotation marks omitted.) *People v. Synowiecki*, 2023 IL App (4th) 220834, ¶ 23.

¶ 79          Defense counsel's performance is measured by an objective standard of competence under prevailing professional norms. *People v. Peck*, 2017 IL App (4th) 160410, ¶ 29. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. "[T]he relevant focus under *Strickland* is on the state of the law at the time of

- 18 -

defendant's trial and appeal" and whether a reasonable attorney should have taken a particular course of action. *People v. Cathey*, 2012 IL 111746, ¶ 26.

¶ 80       When asserting claims of ineffective assistance of counsel, a defendant "must overcome the strong presumption that the challenged action or inaction may have been the product of sound trial strategy." *People v. Smith*, 195 Ill. 2d 179, 188 (2000). A defendant may overcome that presumption if counsel's decision appears so irrational and unreasonable that no reasonable defense attorney facing similar circumstances would pursue such a strategy. *People v. Jones*, 2012 IL App (2d) 110346, ¶ 82. Defendant bears the burden to show that defense counsel's performance was deficient and prejudicial. *Smith*, 195 Ill. 2d at 188.

¶ 81                              2. *This Case*

¶ 82       Here, defendant contends that defense counsel was deficient because, based on the record, had a motion to suppress been filed, it would have been granted under the supreme court's recent decision in *Redmond*. However, at the time of defendant's trial in 2023, *Redmond* had yet to be issued and Fourth District precedent provided that the odor of cannabis alone— whether raw or burnt—was sufficient to establish probable cause for a search of a vehicle. *People v. Molina*, 2022 IL App (4th) 220152, ¶¶ 41-44, *aff'd*, 2024 IL 129237; *People v. Rowell*, 2021 IL App (4th) 180819, ¶¶ 25-26.

¶ 83       In *Molina*, this court was presented with the issue of whether changes in the law regarding cannabis rendered the smell of raw cannabis no longer sufficient to establish probable cause. We answered in the negative, explaining that the recent regulations of cannabis did not require us to reevaluate the law of probable cause, particularly in light of the supreme court's 2020 decision in *People v. Hill*, 2020 IL 124595, not to overrule *People v. Stout*, 106 Ill. 2d 77, 88 (1985) (holding the odor of cannabis alone was sufficient to establish probable cause).

*Molina*, 2022 IL App (4th) 220152, ¶ 52.

¶ 84    Because the McLean County circuit court sits in the Fourth District, it was bound to follow Fourth District precedent, notwithstanding the Third District's holdings in *People v. Stribling*, 2022 IL App (3d) 210098, ¶ 29 (holding that the odor of burnt cannabis alone does not provide probable cause for a vehicle search), and *People v. Redmond*, 2022 IL App (3d) 210524, ¶ 22 (same). See *People v. Rogers*, 2021 IL 126163, ¶ 32 (holding when conflicts arise amongst the appellate districts, the trial court is bound by the decisions of the appellate court of the district in which it sits). Accordingly, had defense counsel filed a motion to suppress evidence obtained from the search of defendant's vehicle, relying solely on the Third District's holdings in *Stribling* and *Redmond*, the trial court would have been required by Illinois Supreme Court precedent (reaffirmed by *Molina*) to deny it.

¶ 85    Defendant notes that petitions for leave to appeal had been granted by the supreme court in *Molina* and *Redmond* and those cases were pending before the supreme court at the time of his trial in 2023. He contends that because those cases were pending, objectively reasonable counsel should have filed a motion to suppress. However, he does not explain or cite any authority for why that fact would have allowed the trial court to grant the motion or why counsel should have filed a meritless motion instead of following our district's precedent.

¶ 86    The Illinois Supreme Court addressed a similar issue in *People v. Webb*, 2023 IL 128957, ¶ 14, in which the defendant argued that, based upon changes to cannabis legislation in Illinois, a dog sniff alert alone no longer provided probable cause to search the defendant's vehicle. Accordingly, the defendant argued that defense counsel provided ineffective assistance by failing to move to suppress cannabis found during a vehicle search. *Id.* However, the supreme court declined to hold that counsel was ineffective, concluding that (1) the totality of the

circumstances, in addition to the canine's positive alert, provided probable cause for a search and (2) a motion to suppress on that basis would not have been meritorious because the trial court was bound to follow the precedent in effect at the time of trial. *Id.* ¶ 34. The court wrote the following:

> "Finally, even if we were to assume that [Officer] Albee solely relied upon the canine's positive alert in conducting his search, and disregard the fact that Albee's canine was trained to alert to other contraband in addition to cannabis, the unargued motion to suppress would have been denied. This court's precedent at the time trial counsel filed defendant's motion to suppress held that a positive alert from a drug-sniffing canine, without more, was sufficient to establish probable cause to search. Despite defendant's arguments concerning changes to the case law following passage of the [Compassionate Use of Medical Cannabis Pilot Program Act (Act) (410 ILCS 130/1 *et seq.* (West 2014))], *Campbell* and *Stout* remain binding authority. To date, this court has not had an opportunity to directly address the validity of the *Campbell* and *Stout* decisions following the changes to cannabis legislation in Illinois. Accordingly, our circuit and appellate courts are bound to apply that precedent to the facts of the case before them under the fundamental principle of *stare decisis*. [Citation.]. Had counsel filed a motion to suppress the cannabis in this case on the basis that the canine sniff, without more, did not establish probable cause to search following passage of the Act, the trial court would have been bound to apply *Campbell* and *Stout* and would have denied that motion. As we noted above, an attorney will not be deemed deficient for failing to make an argument that has no basis in law." (Internal quotation

marks omitted.) *Id.*

¶ 87            Here, like the supreme court in *Webb*, we will not deem defense counsel ineffective for failing to file a motion which, at the time of trial, was meritless.

¶ 88            Furthermore, we reject the implication of defendant's argument that counsel is required to preserve an issue merely for the possibility that it might later become meritorious by a subsequent change in the law. We will not add clairvoyance to the standard for reasonably competent counsel, nor do we believe there is any merit to defendant's implication that counsel failed "to perform basic research" into the law surrounding cannabis and probable cause by allegedly not predicting the Illinois Supreme Court's decision in *Redmond*.

¶ 89            The record does not contain any evidence that defense counsel's decision not to file a motion to suppress was anything other than sound trial strategy based on her knowledge of the law at the time of defendant's trial. We emphasize that "[j]udicial review of counsel's performance is highly deferential." *People v. Bates*, 2018 IL App (4th) 160255, ¶ 47. The following four presumptions are baked into that deference:

> "First, we presume that counsel's actions or inactions are the product of sound trial strategy. [Citation.] Second, we presume that counsel knew the law and how to apply it. [Citation.]. Third, we presume that counsel fully investigated potential defenses and knew the facts of the defendant's case. [Citation.]. Fourth, we presume that counsel's actions and representations in the trial court were ethically sound." *People v. Morrow*, 2024 IL App (4th) 230617-U, ¶ 51.

¶ 90            None of these presumptions are refuted by the record. The validity of defense counsel's strategy is not analyzed on a motion-by-motion basis. At times, reasonable counsel must make tactical decisions to the exclusion of other potentially viable strategies for a variety of

reasons, including possible plea negotiations, the best use of limited time and resources, and the likelihood of a strategy's success. Because the motion would have been meritless, counsel may have reasonably viewed the value of its filing as less important or detrimental to those other concerns. Contrary to defendant's argument, counsel's decision not to file the motion to suppress, in light of *Molina* and *Stout*, supports the presumption that counsel knew the law as it stood at the time because the motion would not have been meritorious.

¶ 91        We also reiterate what we wrote in *Rowell*, 2021 IL App (4th) 180819, ¶ 33:

"Throughout defendant's discussion of the search issues on appeal, defendant operates under the (likely erroneous) assumption that the facts that came out at trial are the *only* facts that could have ever been presented in this case regarding the search of defendant's vehicle. In fact, it is entirely possible counsel may have decided to not file a motion to suppress because he knew of facts contained in police reports or elsewhere that would obviously defeat the motion."

¶ 92        In summary, because defendant never litigated the motion to suppress, what defense counsel knew and what counsel's reasoning was for not filing the motion to suppress is unknown to us.

¶ 93        Recognizing this lack of information, as well as the changes in Illinois precedent in the wake of *Redmond*, defendant argues in the alternative that this court should retain jurisdiction and remand for a full evidentiary hearing on the motion to suppress to ascertain whether it would have been granted. However, the record here is sufficient for us to conclude that counsel's performance was not deficient because (1) the motion to suppress would have failed given the law at the time of defendant's trial and (2) the record contains no affirmative evidence rebutting the presumptions in favor of defense counsel or showing that counsel's

decision was deficient for some other reason. See *Peck*, 2017 IL App (4th) 160410, ¶ 38 ("Counsel's failure to file this motion was not the result of a tactical decision but of a fundamental misjudgment. Counsel's testimony at the *** hearing demonstrated she erroneously believed a motion to suppress would be without merit.").

¶ 94 We note that the State argues that in addition to binding precedent, holding that the odor of cannabis alone was sufficient to establish probable cause, defense counsel could have reasonably believed that had the motion to suppress been argued, the trial court would have denied the motion because of the good faith exception to the exclusionary rule. That exception provides that "evidence obtained in violation of the fourth amendment will not be excluded if the police conducted the search in objectively reasonable reliance on binding appellate precedent." (Internal quotation marks omitted.) *People v. Schantz*, 2022 IL App (5th) 200045, ¶ 50. Although we cannot answer whether the good faith exception would have been successful on this record because no motion to suppress was argued in the trial court, we reiterate that defendant provides no evidence rebutting the presumptions that defense counsel knew the law and the facts of his case or pursued a reasonable trial strategy (*supra* ¶¶ 89-90).

¶ 95 Because the law at the time of defendant's trial provided that the odor of cannabis alone was sufficient to establish probable cause, we conclude that defense counsel was not ineffective for failing to file a motion to suppress a vehicle search based on the officer's smelling cannabis.

¶ 96                                III. CONCLUSION

¶ 97 For the reasons stated, we affirm the trial court's judgment.

¶ 98 Affirmed.